IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| HEALTHRIGHT PRODUCTS, L.L.C., | ) | No. 17 CV 50203 |
| | ) | |
| *Plaintiff*, | ) | Magistrate Judge Iain D. Johnston |
| | ) | |
| v. | ) | |
| | ) | |
| COASTAL COUNTING & INDUSTRIAL | ) | |
| SCALE COMPANY, INC. d/b/a ACTIONPAC | ) | |
| SCALES & AUTOMATION, | ) | |
| | ) | |
| *Defendant*. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Before the Court are defendant's motions for judgment on the pleadings [45] and to transfer [52]. For the following reasons, defendant's motion to transfer to the Central District of California [45] is denied, its motion for judgment on the pleadings [52] is granted, and Count III of plaintiff's complaint is dismissed with prejudice extent the claims therein are brought pursuant to 810 ILCS 5/2-314. The parties are directed to file a revised proposed case management order by January 31, 2019. The telephonic status set for February 28 is stricken and reset to February 7 at 9:00 AM. By February 5, 2019, counsel shall provide direct-dial numbers for the hearing to the Court's operations specialist, who will initiate the call.

**I. Background**

Plaintiff HealthRight Products, LLC ("HealthRight") brings claims of breach of contract and breach of implied and express warranties against defendant Coastal Counting & Industrial Scale Company, Inc., d/b/a/ ActionPac Scales & Automation ("ActionPac") related to the manufacture, sale, and installation of a large packaging machine in the summer of 2016. HealthRight is a business incorporated under the laws of Oregon with its principal place of business listed as Tigard, Oregon. ActionPac is a business incorporated under the laws of California with its principal place of business in Oxnard, California.

This case stems from a contract the parties entered into on June 9, 2016. According to the terms of the contract as alleged in plaintiff's complaint, ActionPac was to design and manufacture a machine for filling individually sealed plastic bags. In exchange for the purchase price, ActionPac was to manufacture the machine, deliver it to a location in DeKalb, Illinois, install the machine, and send two technicians to train HealthRight's contractors to operate it correctly. ActionPac manufactured and shipped the machine, then sent two technicians to install it. However, the technicians allegedly left before making the machine operational or training the employees. In the next few months, the machine began to show signs of many design and

manufacturing problems. The machine is still in use in Illinois; however, it allegedly does not perform to the levels promised in the original contract.

Plaintiff originally filed this lawsuit on May 17, 2017 in the Circuit Court of the Twenty-Third Judicial District of DeKalb County, Illinois. HealthRight then removed the case on the basis of diversity of citizenship. 28 U.S.C. § 1332, 1441, 1446. The complaint alleges three counts: (1) breach of contract, (2) breach of express warranty, and (3) breach of implied warranty of merchantability and fitness for a particular purpose.

## II. Analysis

### A. Motion To Transfer

A district court may transfer a civil case to another district where it might have been brought if the transfer is in the interest of justice and for the convenience of the parties and witnesses. 28 U.S.C. §1404(a). Transfer is appropriate under §1404(a) where (1) venue is proper in the transferor district, (2) jurisdiction and venue are proper in the transferee district, and (3) transfer will serve the interests of justice and the convenience of the parties and witnesses. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986); *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 959 (N.D. Ill. 2000). The party moving for transfer bears the burden to show "by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey*, 796 F.2d at 220. A court must consider and weigh each factor in light of all relevant circumstances of the case. *Coffey*, 796 F.2d at 219. The weight each factor is given lies within the sound discretion of the trial judge. *Id.*; *Research Automation, Inc. v. Schrader-Bridgeport Intern., Inc.*, 626 F.3d 973, 979 (7th Cir. 2010).

#### 1. Venue in Transferor District: Northern District of Illinois

Venue is proper in the Northern District of Illinois. Venue is proper in a judicial district where "a substantial part of the events or omissions giving rise to the claim occurred[.]" 28 U.S.C. 1391 (b)(2). In this case, the packaging equipment at issue was delivered to and installed in DeKalb, Illinois. Defendant sent two of its employees to Illinois to aid in the installation process there. Additionally, the parties agree that venue is proper in the Northern District of Illinois. Therefore, the first element of § 1404(a) is satisfied.

#### 2. Venue in Transferee District: Central District of California

Venue is also proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located[.]" 28 U.S.C. § 1391(b)(1). For venue purposes, a corporation resides "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question[.]" 28 U.S.C. § 1391(c). In this case, venue is proper in the transferee district, the Central District of California. Defendant ActionPac is a California corporation with its principal place of business in Oxnard, California, which is located within the Central District of California. Therefore, the federal courts in that district have general personal jurisdiction over ActionPac, *see Daimler AG v. Bauman*, 571 U.S. 117, 137, making venue proper there under § 1391(b)(1). As with venue in

the Northern District of Illinois, the parties do not dispute that venue is proper in the Central District of California. Accordingly, the second element of § 1404(a) is satisfied.

### 3. Convenience and the Interest of Justice

Finally, the movant must show that a transfer to the transferee court would serve the interests of justice and the convenience of the parties and witnesses, therefore making transfer clearly more convenient. *Coffey*, 796 F.2d at 219–20. The private interest factors a court considers are (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the parties; and (5) the convenience of witnesses. *Amoco Oil Co.*, 90 F. Supp. 2d at 960. The public interest factors evaluated implicate the efficient administration of the court system and include (1) the relative speed cases will proceed to trial; (2) the court's familiarity with applicable law; and (3) the desirability of local disputes being resolved in their locale. *Id.* at 960–61. As discussed below, the factors in this case, taken together, weigh against transfer and the defendant has not met its burden to show that transfer would be clearly more convenient.

### a. Private Interests

#### *1. Plaintiff's Choice of Forum*

Although not determinative, a plaintiff's choice of forum is afforded substantial weight where it is the plaintiff's home forum. *Amoco Oil Co.*, 90 F, Supp. 2d at 960–61. "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *In re Nat'l Presto Indus., Inc.*, 347 D.3d 662, 664 (7th Cir. 2003). However, courts afford less weight to the plaintiff's forum choice if it is not the site of material events relating to the claim or otherwise has "relatively weak connections with the operative facts giving rise to the claim." *Von Holdt v. Husky Injection Molding Sys.*, 887 F. Supp. 185, 188 (N.D. Ill. 1995).

A corporation is at home where it resides, and a plaintiff entity is deemed to reside where it maintains its principal place of business. *See* 28 U.S.C. § 1391(c)(2). As stated above, HealthRight is an Oregon corporation and lists its principal place of business in Oregon. In its complaint, HealthRight states that it is "doing business in Illinois." Dkt. 1 Ex. 1 (Compl.) at 2. ActionPac argues HealthRight is not at home in Illinois on this basis.[1] Dkt. 53 at 4. Rather than responding to ActionPac's argument that HealthRight is not at home in Illinois, HealthRight contends instead that it operates within Illinois because ActionPac sent two employees to Illinois to install the machine and the machine remains there. *See* Dkt. 57 at 4. Because HealthRight does not address or challenge ActionPac's argument that it is not at home in Illinois, the Court will assume that Illinois is not HealthRight's home state.

---

[1] In its reply brief, ActionPac argues for the first time that because "[t]he case is only here before this Court as a result of Defendant's removal . . . the Northern District of Illinois should not be considered Plaintiff's 'chosen forum.'" Dkt. 67 at 2 (citation omitted). However, it is well settled that "[a]rguments raised for the first time in a reply brief are waived." *Laborers' Pension Fund v. W. R. Weis Co.*, 879 F.3d 760, 768–9 (7th Cir. 2018). Thus, the Court will not address this argument.

However, although the Northern District of Illinois is not plaintiff's home forum, there is more than a "relatively weak" connection between Illinois and the facts giving rise to the claim. Though the contract was negotiated and formed mostly in California, the machine was to be delivered to HealthRight's contractor in the Northern District of Illinois. The machine was shipped, is currently located, and is in operation in Illinois. ActionPac sent two of its own technicians to Illinois to help install the machine. Plaintiff chose to litigate the case here where the allegedly defective machine is located. Therefore, plaintiff's choice of forum is entitled to some weight given this forum's connection to material events in this suit. *See Meyer v. Grady*, No. 17 CV 289, 2017 U.S. Dist. LEXIS 86855, at *6–7 (N.D. Ill. June 6, 2017).

### *2. Situs of Material Events*

This factor is neutral. In breach of contract cases, the situs of material events "is where the business decisions leading up to and causing the breach occurred" and often includes "the location of performance or non-performance under the contract." *Chi. Reg'l Council of Carpenters v. Willman Constr., Inc.*, No. 15 C 10163, 2017 U.S. Dist. LEXIS 41094, at *25 (N.D. Ill. Mar. 22, 2017) (internal citations omitted); *Preston v. Am. Honda Motor Co.*, No. 17 C 3549, 2017 U.S. Dist. LEXIS 181635 (N.D. Ill. Nov. 2, 2017) (breach of warranty is breach of contract claim). In this case, both California and Illinois have material relationships to the events giving rise to the claim.

In support of its motion, ActionPac argues that the contract for the machine was negotiated and discussed by the parties located in California and Oregon, was entered into and accepted in California, and that the sales contract obligations ended at the time of delivery of the product, which also occurred in California. Dkt. 53 at 4–5. They further state that the machine was designed and built in California. *Id*. However, ActionPac also admits in its answer that the contract included on-site installation of the machine in DeKalb, Illinois, that two of their technicians would be sent to install it, and those technicians would train personnel there to use the machine. Dkt. 22 (Answer) at 2. ActionPac further admits that it sent two technicians to install the machine in Illinois and train employees to use it. *Id*. at 4. The machine remains located in Illinois.[2] Because both California and Illinois have material connections to the breach of contract claim, this factor is neutral. *See Chi. Reg'l*, 2017 U.S. Dist. LEXIS 41094, at *25.

### *3. Relative Ease of Access To Sources of Proof*

The relative ease of access to sources of proof weighs slightly against transfer. The likely sources of proof in this case are the documents evincing the negotiation of the contract at issue, the contract itself, the machine, and depositions. To the extent that ActionPac argues that any documentary evidence is in California or Oregon, this factor is neutral. "When documents are easily transferable, access to proof is a neutral factor . . . neither for nor against transfer." *First Nat'l Bank v. El Camino Res., Ltd.*, 447 F. Supp. 2d 902, 912 (N.D. Ill. 2006) (internal citation

---

[2] In its reply brief, ActionPac does not dispute HealthRight's assertions that the machine remains in Illinois. *See* Dkt. 67.

omitted). The documentary evidence is easily transferable electronically; thus, it does not affect the transfer analysis.

ActionPac argues that the parties' employee witness deposition testimony needed in this case favors transfer, as these witnesses are in California (ActionPac's) and likely in Oregon (HealthRight's). Therefore, it contends, travel to Illinois is inconvenient. Dkt. 53 at 6. HealthRight argues that the machine is in Illinois. Dkt. 57 at 4–5. The Court agrees that the Central District of California is geographically closer to the parties' employees in California and Oregon, respectively.

However the allegedly faulty machine will undoubtedly also be a source of proof in this litigation, and it sits in Illinois. Additionally, if the case were transferred to the Central District of California, HealthRight's employee witnesses located in Oregon would still be inconvenienced by travel. Although Oregon is geographically closer to California than Illinois, thus making travel for HealthRight's employees for litigation somewhat more convenient, HealthRight nonetheless chose to litigate in Illinois despite the travel involved. Because the documentary evidence is easily transferable and a major source of proof is in Illinois, on balance, this factor weighs slightly against transfer.

*4. Convenience of the Parties*

For this factor, courts "consider the availability of and access to witnesses, and each party's access to and distance from resources in each forum." *Research Automation*, 626 F.3d at 978. Although the ability for the parties to bear the cost of litigation in each forum is considered, transfers "cannot be used simply to shift the one party's inconvenience onto another party." *First Nat'l*, 447 F. Supp. 2d at 913 (citation omitted). "[W]hen the inconvenience of the alternative venues is comparable there is no basis for a change of venue; the tie is awarded to the plaintiff[.]" *In re Nat'l Presto Indust.*, 347 F.3d 662, 665 (7th Cir. 2003).

ActionPac argues all its employees, who would all have relevant information relating to this case, are in California, essential to ActionPac's business, and that litigating this case in Illinois would bring business to a complete standstill due to the cost of time and money involved. They support these contentions with the affidavit of ActionPac CEO John Dishion. *See* Dkt. 53 Ex. 1. They argue that these concerns would be alleviated if transfer were granted. *See* Dkt. 53 at 6. ActionPac also speculates that HealthRight's witnesses are in Oregon and that the costs of litigation would similarly be reduced by granting a transfer to California. HealthRight responds that it chose to litigate in Illinois, despite where its party witnesses may be, because this choice made access to the machine as convenient as possible for all parties; additionally, forcing its own employees to travel to California "would be similarly inconvenient and burdensome" relative to ActionPac's inconvenience litigating in Illinois. Dkt. 57 at 5.

Although Oregon is closer to California than to Illinois, HealthRight chose to litigate in Illinois where the machine is located. As previously described, the machine will likely be a critical source of proof in this litigation and, knowing this, plaintiff opted to file suit in Illinois to make accessing it more convenient. *See* Dkt. 57 at 5. Any convenience in travel gained by litigating in California is balanced against the convenience of litigating in Illinois where the

machine is located. Both forums would inconvenience the parties to a degree, and where the inconvenience for the parties in each venue is similar, ties go to the plaintiff. *Nat'l Presto Indust.*, 374 F.3d at 665. Transferring the case to California would undoubtedly be more convenient for ActionPac's party witnesses, but would shift the inconvenience to HealthRight as it would restrict access to the machine and, as discussed next, to its non-party witnesses. *See Research Automation*, 626 F.3d at 978. Therefore, this factor weighs against transfer.

### *5. Convenience of Non-Party Witnesses*

The final private interest factor, the convenience of non-party witnesses, weighs slightly against transfer. "The convenience of witnesses depends on the number of witnesses in each forum, the nature and importance of the witnesses' testimony, expenses for each witness to travel and be absent from his or her job, and 'whether the witnesses can be compelled to testify.'" *Perry v. CNN, Inc.*, No. 14 C 1194, 2014 U.S. Dist. LEXIS 118409, at *8 (N.D. Ill. Aug. 25, 2014) (quoting *Event News Network, Inc. v. Thill*, No. 5 C 2972, 2005 U.S. Dist. LEXIS 26643 at *16 (N.D. Ill. Nov. 2, 2005)). More weight is given to non-parties than party witnesses because it is presumed parties will appear voluntarily. *First Nat'l*, 447 F. Supp. 2d at 913. The convenience of counsel or a party's expert witnesses is not a factor in analyzing a § 1404(a) motion. *See Genden v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 621 F. Supp. 780, 782 (N.D. Ill. 1985); *Lynch v. Obligacion*, No. 90 CV 5124, 1991 U.S. Dist. LEXIS 1806, at *7 (N.D. Ill. 1991). The movant must specify key witnesses, generally state the nature of their testimony, and show that the witness is necessary to their case. *First Nat'l*, 447 F. Supp. 2d at 913.

ActionPac CEO John Dishion's affidavit identifies one potential non-party witness, Linda Zhou, a representative of a Chinese manufacturer that made component parts for the packing machine and who lives in Ventura County, California. Dkt. 53 at 7. The affidavit describes Zhou as "a key witness regarding HealthRight's claims that the weighing and packaging equipment sold was defective and ActionPac's defenses to those claims," her knowledge of the consequences of plaintiff's failures to supply product samples and going forward with testing despite warnings from ActionPac of possible consequences of doing so, and that her cooperation would be easier and more convenient if transfer were granted. Dkt. 53 Ex. 1 at 3–4. HealthRight argues that ActionPac has failed to describe why Zhou's testimony is necessary. Dkt. 57 at 6. But ActionPac has seemingly identified why Zouh's testimony is necessary, because it relates to the quality of the component parts of the machine as well as the consequences of not supplying certain product samples as requested and proceeding with its design and manufacture anyway. Dkt. 53 Ex. 1 at 3–4. Thus, non-party Zouh's presence in California favors the motion to transfer.

HealthRight has identified six non-party witnesses in Illinois it contends weigh against a transfer. However, it is undisputed that two are retained experts and so their presence in Illinois is not relevant to the transfer analysis. *See Genden*, 621 F. Supp. at 782.

Two others, Eric Simmons and Mark Gardner, are electricians who worked on the machine after it was installed and who have no knowledge of the contract at issue. HealthRight argues that electricians Simmons and Gardner can testify to issues of fact that "go directly to the

6

deficiency of the machine at issue." Dkt. 57 at 6. Finally, HealthRight identifies Brian Severson and Jordan Johnston as the machine's operators who are both in Illinois and are crucial witnesses with intimate knowledge of the machine's daily operation. *Id*. ActionPac disputes the importance of these witnesses, for instance contending that the electricians can testify to "only very narrow issues of fact." Dkt. 53 at 8.

But as the machine's operators, Severson and Johnston know the nature of the machine, the repairs made, and the machine's performance after it was delivered, all of which appear to be important issues in this case. Although they were not involved in forming the contract, their knowledge regarding the alleged breach, namely the functionality of the packing machine, bears on important probable issues in the case. The electricians Simmons and Gardner also were not involved in forming the contract; however, they have similar relevant information regarding the machine's function and alleged electrical issues after it was installed.

The inconvenience to plaintiff's four non-party, non-expert witnesses in Illinois outweighs the inconvenience to defendant's sole California non-party witness if the case remains in Illinois. Therefore, overall, this factor slightly weighs against transfer.

### b. Public Interests

#### *1. Speed to Trial*

The speed to trial factor slightly favors transfer. In evaluating the relative speed with which a case will go to trial, courts consider the Federal Court Management Statistics for " (1) the median months from filing to disposition and (2) the median months from filing to trial." *Amoco Oil Co.*, 91 F. Supp. 2d at 962. In this district, the median time from filing to disposition during the relevant timeframe was 8.5 months, whereas in the Central District of California was 4.9 months; the median time from filing to trial was 34.8 months in this district and 19.9 months in the Central District of California. *See* Dkt. 53 Ex. 3. Defendant argues, and plaintiff concedes, that this factor slightly favors transfer. The Court agrees that the speed to trial factor slightly favors transfer to the Central District of California.

#### *2. Familiarity with Applicable Law*

The familiarity with the applicable law factor weighs neither for nor against transfer. This is a breach of contract case. The principles of contract law tend to be universal, well settled, and not complex, making it unlikely that courts in this district or in the Central District of California would have difficulty applying the relevant contract law. *See Coffey*, 796 F.2d at 221; *Amoco Oil Co.*, 91 F. Supp. 2d at 962. The parties also agree on this point. Therefore, this factor is neutral.

#### *3. Relationship of the Communities to Litigation and the Desirability of Resolving Local Disputes*

Both California and Illinois have a legitimate interest in resolving this dispute in their respective forums. Illinois has an interest in ensuring Illinois residents are not injured by

defective equipment manufactured out of state. However, California has an interest in resolving breach of contract cases involving a California resident. Thus, this factor is neutral.

In sum, each private interest factor either weighs against transfer or is neutral, and only one public factor slightly favors transfer. ActionPac has not met its burden to show that the Central District of California is clearly more convenient than the Northern District of Illinois. Therefore, defendant's motion to transfer is denied. The Court now addresses defendant's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

### B. Motion for Judgment on the Pleadings

ActionPac filed a motion for judgment on the pleadings on April 25, 2018, seeking dismissal of Count III of HealthRight's complaint. In support, it states that a copy of the contract at issue is attached to plaintiff's complaint and it contains a valid choice of law provision stating that disputes arising from the contract are to be resolved under the laws of California. Because Count III of plaintiff's complaint alleging breach of implied warranties is based on Illinois law, ActionPac argues plaintiff is barred by the terms of the contract from pursuing these warranty claims. *See* Dkt. 45. Indeed, the attached contract marked as Exhibit A contains a choice of law provision which states that the contract is to be enforced under the laws of California. Dkt. 1 Ex. 1 at 17 ¶ 9(E).[3] Additionally, Count III of HealthRight's complaint alleging breach of implied warranties cites 810 ILCS 5/2-314 in support. *Id*. at 7. Therefore, judgement on the pleadings pursuant to Fed. R. Civ. P. 12(c) seems warranted to the extent the claims are brought under Illinois law absent any indication otherwise. *See Lyon Fin. Servs. v. Ill. Paper & Copier Co.*, 732 F.3d 755, 758–59 (choice of law provisions generally followed in Illinois); *U.S. Sur. Co. v. Stevens Family Ltd. P'ship*, 905 F. Supp. 2d 854, 858 (N.D. Ill. 2012) (applying California law where valid choice of law provision was included in contract at issue).

Moreover, briefing on the motion was stayed on July 11, 2018 to allow ongoing settlement discussions to continue. Dkt. 61. After the parties indicated these discussions had not resolved the case, Dkt. 62, the Court entered a briefing schedule on the motion and made HealthRight's response due on September 28, 2018, Dkt. 63, yet it never filed a response. Therefore, any arguments that may have been made against the motion are forfeited. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 718, 721 (7th Cir. 2011) ("[A] litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss."). ActionPac's motion for judgment on the pleadings is granted and Count III of the complaint alleging breach of implied warranties, to the extent that the claims therein are brought under 810 ILCS 5/2-314, is dismissed.

## III. Conclusion

For the reasons above, defendant's motion to transfer [52] is denied, defendant's motion for judgment on the pleadings [45] is granted, and Count III of the complaint is dismissed with prejudice to the extent the claims therein are brought pursuant to 810 ILCS 5/2-314. The parties

---

[3] The section states "[t]he execution, validity, construction, and performance of this contract of sale shall be construed and enforced in accordance with the laws of the State of California."

are directed to file a revised proposed case management order by January 31, 2019. The telephonic status set for February 28 is stricken and reset to February 7 at 9:00 AM. By February 5, 2019, counsel shall provide direct-dial numbers for the hearing to the Court's operations specialist, who will initiate the call.

Date:  1/17/2019                                    _____
                                                    U.S. Magistrate Judge, Iain D. Johnston